IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JILL E. MACK,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        CASE NO. CV415-196
                                       )
BOARD OF REGENTS OF THE                )
UNIVERSITY SYSTEM OF GEORGIA,          )
                                       )
        Intervenor,                    )
                                       )
HERTY ADVANCED MATERIALS               )
DEVELOPMENT CENTER,                    )
                                       )
        Defendant.                     )
_____)

## O R D E R

Before the Court is Intervenor Board of Regents of the
University System of Georgia's (the "Board") Motion to Dismiss.
(Doc. 16.) For the following reasons, the Board's Motion to Dismiss
is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

On July 8, 2015, Plaintiff filed a complaint against Herty
Advanced Materials Development Center ("HAMDC"). (Doc. 1.) She
alleged that the entity had hired her in April of 2012 to act as
a quality control laboratory technician. (Id. at ¶ 6.) On August
15, 2013, Plaintiff took time off from work to care for her husband
pursuant to the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654
("FMLA"). (Id. at ¶ 7.) Around the same time, Plaintiff informed

her employer that she would need to take time off for surgery related to her carpal tunnel syndrome and cubital tunnel syndrome. (Id. at ¶ 8.) She took the requisite time, and on October 8, 2013, began receiving short-term disability benefits. (Id. at ¶¶ 9-10.)

While she was recovering, Plaintiff learned that an employee had been hired to replace her. (Id. at ¶ 11.) Plaintiff's employment with HAMDC was terminated on November 12, 2013. (Id. at ¶ 12.) Plaintiff alleges that at the time of her termination she had remaining unexpired FMLA leave, was not informed that she was ineligible for FMLA leave, and was on medical leave for a personal health condition. (Id. at ¶¶ 13-17.) Plaintiff brought claims for violations of the FMLA and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). (Id. at ¶¶ 18-35.)

On July 9, 2015, the Court issued a summons to Herty Advanced Materials Development Center, care of Alexander A. Koukoulas. (Doc. 2.) On November 13, 2015, an entity named Herty Advanced Materials Development Center, LLC ("Herty, LLC") answered the complaint.[1] (Doc. 4.) The answer stated that Herty, LLC was making a special appearance to file an answer on behalf of the named defendant HAMDC. (Id. at 1.) However, the answer stated that

---

[1] According to its brief in response to this Court's show cause order (Doc. 25), Herty, LLC answered Plaintiff's complaint because "it was properly served through its registered agent" although it was not the proper defendant and "filed an [a]nswer to avoid the possibility of default." (Doc. 33 at 3.)

Plaintiff had failed to join an indispensable party because Herty, LLC had never employed Plaintiff. (Id. at 2.) Three days later, the Board filed its Motion to Dismiss alleging that it was the successor to and continuation of the HAMDC. (Doc. 6.) The Board argued that the complaint should be dismissed for improper service. (Doc. 6, Attach. 1 at 2.) The Court dismissed that motion because the Board had failed to file either a motion to intervene or a motion to substitute party. (Doc. 12.)

On July 12, 2016, the Board filed a Motion to Intervene. (Doc. 13.) The motion was granted on August 2, 2016. (Doc. 14.) On August 15, 2016, the Board filed a renewed motion to dismiss the complaint in lieu of an answer. (Doc. 16.) In response to the Board's Motion to Dismiss, Plaintiff, who does not contest the applicability of the Eleventh Amendment to the Board, argued that the Court should grant Plaintiff the opportunity to discover the identity of her actual employer. (Doc. 20.) Plaintiff noted that she served HAMDC and the individual that terminated her from HAMDC, Alexander Koukoulas. (Id. at 6.) Mr. Koukoulas is also listed as the Chief Executive Officer ("CEO") and President of HAMDC and Herty, LLC. (Doc. 20, Attach. 3.) Moreover, HAMDC and Herty, LLC share the same address. (Doc. 20, Attach. 4, Attach. 5.) Plaintiff also alleged that none of her work documents reference the Board. (Id.) As a result of the confusion surrounding Plaintiff's proper employer, this Court administratively terminated the Board's

Motion to Dismiss and directed the parties to file briefs regarding Plaintiff's proper employer and the relationship between HAMDC, Herty, LLC, and the Board. (Doc. 25.) The Board filed a brief on behalf of itself and HAMDC addressing the employment of Plaintiff and arguing that O.C.G.A. § 20-3-73.3 transferred control and ownership of HAMDC to the Board. (Doc. 28.) Plaintiff responded to the Board by agreeing that Plaintiff was employed by HAMDC prior to the transfer of ownership to the Board, but argued that her employment was still with HAMDC because her employment-related documents all referenced HAMDC as her employer. (Doc. 29.) Herty, LLC also responded to this Court's show cause order by pointing to evidence that Herty, LLC did not exist for the majority of Plaintiff's employment with HAMDC and that Herty, LLC did not receive an Employer Identification Number ("EIN") until after Plaintiff was terminated from HAMDC. (Doc. 33.) After reviewing the briefs regarding Plaintiff's proper employer, the Board's Motion to Dismiss is now ripe for review.

## ANALYSIS

### I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

4

harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d. 929 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1964). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966) (alteration in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570, 127 S. Ct. at 1973). For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949) (internal quotations omitted). Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966). Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." Sinaltrainal, 578 F.3d at 1268 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1964).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal, 578 F.3d 1252 at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [plaintiff's] allegations." Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545, 127 S. Ct. at 1959).

## II. THE BOARD'S MOTION TO DISMISS

The Board argues in its Motion to Dismiss that it was Plaintiff's employer and, therefore, Plaintiff's claims are barred for various reasons, including that the Board is immune from suit

under the Eleventh Amendment. (Doc. 16.) The Board also argues that because Plaintiff served HAMDC and not the Chancellor of the Board, as required by Georgia law, Plaintiff's claims should be dismissed for improper service. (Id.) Many of the Board's arguments related to the dismissal of Plaintiff's claims are dependent on the Board being Plaintiff's employer at the time of the relevant events. (Id.) Accordingly, the Court must determine which entity, HAMDC, the Board, or Herty, LLC, was the former employer of Plaintiff before reaching the merits of the Board's Motion to Dismiss.

A. Plaintiff's Former Employer

As an initial matter, the parties disagree as to which entity employed Plaintiff during the relevant time period. Apparently, there are two entities using the Herty Advanced Material Development Center name: one an LLC and one an entity overseen by the Board. Due to the uncertainty surrounding which of these entities was Plaintiff's former employer, the Court directed the parties to explain the employment relationship between the Plaintiff and the various Herty entities. (Doc. 25.) Following the Court's order, the Board filed a brief addressing the employment of Plaintiff. (Doc. 28.) In its brief, the Board argued that it "became Plaintiff's employer" when O.C.G.A. § 20-3-73.3 was codified, "transferring ownership of HAMDC to [the Board] effective July 1, 2012 . . . ." (Doc. 28 at 1.) The Board argues

7

that § 20-3-73.3 transferred to the Board all "obligations, liabilities, and rights" of HAMDC and the Board became "the successor to and continuation of the former board of trustees" of HAMDC. (Id. at 1-2.) Due to the Board's control over HAMDC, the Board contends that "HAMDC ceased to exist as a separate entity, apart from [the Board], on July 1, 2012." (Id. at 2.) At this time, according to the Board, the Board "became the employer of HAMDC's employees, including Plaintiff." (Id. at 2.)

In Plaintiff's response to the Board's brief, Plaintiff argues that she was not employed by the Board because the entity "created" by § 20-3-73.3 was "The Georgia Southern University Herty Advanced Materials Development Center" and "Plaintiff's employment-related documents do not refer to her employer as Georgia Southern University, [the Board], or Georgia Southern University Herty Advanced Materials Development Center." (Doc. 29 at 2.) Because Herty, LLC answered Plaintiff's complaint and Herty, LLC has the same CEO/President and address as HAMDC, Plaintiff asserts that she "does not have the ability to detect any further information on the topic [of her employment]" and, therefore, the Court should allow discovery on the issue. (Id. at 3.) However, Plaintiff admits "it is undisputed that Plaintiff was employed with HAMDC prior to transfer of ownership of the HAMDC to [the Board]." (Id. at 3.)

Following Plaintiff's response, Herty, LLC filed a brief

arguing that it could not have been Plaintiff's former employer because "Plaintiff was hired by her actual employer well before [Herty, LLC] came into existence . . . ." (Doc. 33 at 3.) Specifically, Herty, LLC argues that it was not registered as a limited liability company until July 23, 2013 (Doc. 33, Attach. 1), it did not execute its Company Agreement until December 1, 2013 (Doc. 33, Attach. 2), and it was not assigned an EIN until December 3, 2013 (Doc. 33, Attach. 3). (Doc. 33 at 3.)

The Court must first determine which Herty entity employed Plaintiff at the time of her leave and subsequent termination. Plaintiff admitted that she "was employed with HAMDC prior to transfer of ownership of the HAMDC to [the Board]." (Doc. 29 at 3.) Plaintiff also submitted numerous documents naming her employer as HAMDC, including her 2013 W-2 form (Doc. 33, Attach. 2), her total compensation statement (Doc. 33, Attach. 1), and her direct deposit statements (Doc. 33, Attach. 4). Notably, these documents do not name the Board or Herty, LLC as Plaintiff's employer. Although HAMDC and Herty, LLC have the same address and at least one overlapping employee, Mr. Koukoulas, Plaintiff could not have been employed by Herty, LLC. Herty, LLC did not exist at the time Plaintiff was hired by HAMDC and did not receive its EIN until after Plaintiff was terminated from HAMDC. Therefore, taking all facts pleaded in Plaintiff's complaint as true, the Court finds that Plaintiff's former employer was HAMDC, not Herty, LLC. The

9

parties do not dispute that ownership and control of HAMDC was transferred to the Board on July 1, 2012 and "that Plaintiff was employed by HAMDC prior to transfer of ownership of [] HAMDC to [the Board]." (Doc. 29 at 3.) As a result, the Court finds that the Board does control HAMDC. However, the Court notes that Plaintiff's employment-related documents name only HAMDC as Plaintiff's employer, list only HAMDC's address, and state that HAMDC's CEO/President terminated Plaintiff's employment. Moreover, the Board failed to produce evidence showing that it was named as Plaintiff's employer on any employment-related documents. Therefore, the Court finds that Plaintiff did not work directly for the Board, but for HAMDC, and naming HAMDC as her employer was a reasonable misunderstanding.[2]

B. Eleventh Amendment Immunity

In its Motion to dismiss, the Board argues that Plaintiff's claims must be dismissed because it was Plaintiff's employer, and, as an agency of the State of Georgia, the Board is entitled to Eleventh Amendment immunity. (Doc. 16 at 8-9, 12.) However, as previously explained, Plaintiff was not directly employed by the Board, but by HAMDC, an entity controlled and owned by the Board. Accordingly, for HAMDC to be immune from certain claims under the

---

[2] The Court will not dismiss Plaintiff's claims for improper service because, according to the pleadings and employment-related documents submitted by Plaintiff, Plaintiff only knew HAMDC as her employer.

Eleventh Amendment, it must be considered and "arm of the State." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).

Eleventh Amendment immunity not only protects state agencies from suit for money damages, but also extends to public entities acting as state instrumentalities or "arms of the State." Id. In determining whether an entity is an arm of the state, the Court of Appeals for the Eleventh Circuit uses a four factor test: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309.

Here, state law expressly defines HAMDC as an entity controlled and owned by the Board. See O.C.G.A. § 20-3-73.3(c). On July 1, 2012, HAMDC's "obligations, liabilities, and rights [were] transferred to, vested in, and assumed by the [Board]." O.C.G.A. § 20-3-73.3(d). This provision also indicates that the Board is responsible for any judgments against HAMDC as the governing body of it. Although the parties did not present any evidence indicating the source of funding for HAMDC, the Board's control over HAMDC is so great as to outweigh any outside source of funding. As a result of the Board's control and governance of HAMDC, the Court finds that HAMDC is an arm of the state and afforded Eleventh Amendment immunity.

Because the Court finds that HAMDC is afforded Eleventh

Amendment immunity, the Court will now address which of Plaintiff's claims against HAMDC are barred by the Eleventh Amendment. In her complaint, Plaintiff asserts claims against HAMDC under the ADA and the FMLA. (Doc. 1 at 5-7.) Plaintiff's complaint did not specify under which provisions of the ADA and FMLA she brings her claims, however, the Court will construe Plaintiff's alleged facts to bring claims under Article I of the ADA, the self-care provision of the FMLA, and the family-care provision of the FMLA.

### 1.   Plaintiff's ADA Claim

Plaintiff brings a claim against HAMDC for violating "the ADA by terminating Plaintiff based on her known or perceived disability and by refusing to make reasonable accommodations for Plaintiff's known or perceived disability." (Id. at 8.) Although Plaintiff does not specify under which provision of the ADA she brings this claim, the Court construes the claim to be brought under Article I of the ADA because Plaintiff asserts she was terminated based on her disability. (Id.)

Title I of the ADA prohibits certain employers, including states, from "discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "However, the United States Supreme Court has

12

specifically held that the Eleventh Amendment bars private individuals from filing suit against states under Title I [of the ADA] for money damages." Clifton v. Ga. Merit Sys., 478 F. Supp. 2d 1356, 1362-63 (N.D. Ga. 2007) (quoting Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S. Ct. 955, 967-68, 148 L. Ed .2d 866 (2001)).

In this case, Plaintiff is a private citizen bringing a claim under Title I of the ADA against HAMDC. As an arm of the state, HAMDC is protected by the Eleventh Amendment and, as a result, is immune from Plaintiff's ADA claim. Accordingly, Plaintiff's claim against HADMC arising under Article I of the ADA is **DISMISSED**.

Even if Plaintiff had shown that HADMC was not entitled to immunity, Plaintiff's complaint is insufficient to state a claim for which relief can be granted under the ADA. "To prevail on her ADA claim, plaintiff ultimately must show that: (1) she has a disability, (2) she is a 'qualified individual' as defined by the ADA, and (3) defendant discriminated against her because of her disability." Wells v. W. Ga. Tech. Coll., No. 1:11-cv-3422-JEC, 2012 WL 3150819, at *3 (N.D. Ga. Aug. 2, 2012) (citing Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1215 (11th Cir. 2004). "In order to survive defendant's motion to dismiss, plaintiff's complaint must include sufficient facts on each of those elements to support a 'reasonable inference' that she is entitled to relief under the ADA." Id.

Plaintiff fails to assert specific facts in her complaint to survive a motion to dismiss. As for the first and second elements of an ADA claim, Plaintiff conclusively asserts she is a qualified individual with a disability because she suffered from carpal tunnel syndrome and cubital tunnel syndrome. (Doc. 1 at 7.) Moreover, she asserts that HAMDC violated the ADA by not providing her with an accommodation for her disability, but does not specifically allege the accommodations she requested. Most of Plaintiff's allegations merely restate the elements necessary for a claim under the ADA. These conclusory allegations are insufficient to state a claim for which relief can be granted. See, e.g., Wells, 2012 WL 3150819, at *4 (granting an employer's motion to dismiss on an employee's ADA claim because the employee merely restated the elements of an ADA claim and provided insufficient facts to support that she was a qualified individual).

## 2. Plaintiff's FMLA Claims

In addition to her ADA claim, Plaintiff brings claims under the FMLA. The FMLA allows eligible employees to take up to twelve weeks of unpaid leave per year for any of several reasons, including a "serious health condition" of the employee or her spouse, child, or parent. See 29 U.S.C. § 2612(a)(1)(C-D); Nev. Dep't of Human Res. V. Hibbs, 538 U.S. 721, 724, 123 S. Ct. 1972, 1976, 155 L. Ed. 2d. 953 (2003); Wells, 2012 WL 3150819, at *2. The provision of the FMLA that allows an employee to take leave to

14

care for a serious medical condition of her spouse, child, or parent is commonly referred to as the "family-care provision." 29 U.S.C. § 2612(a)(1)(C); Nev. Dep't of Human Res., 538 U.S. at 725, 123 S. Ct. at 1976. Meanwhile, the "self-care provision" of the FMLA "entitles an 'eligible employee' [up] to twelve weeks of leave during any twelve month period if necessitated by 'a serious health condition that makes the employee unable to perform the functions of [his or her] position.' " Wells, 2012 WL 3150819, at *2 (citing 29 U.S.C. § 2612(a)(1)(D)). Plaintiff does not specify under which provisions of the FMLA she brings her claims, however, Plaintiff alleges that HAMDC terminated her employment in retaliation for her taking FMLA leave to care for her ailing husband and to recover from her own carpal tunnel surgery. (Doc. 1 at 5-6.) Accordingly, the Court will construe Plaintiff's allegations as one claim arising under the self-care provision of the FMLA and one claim arising under the family-care provision of the FMLA.

As for Plaintiff's claim arising under the self-care provision of the FMLA, Plaintiff argues that when she "took leave from work due to a surgery . . . [HAMDC] interfered with Plaintiff's FMLA leave and retaliated against Plaintiff under the FMLA by terminating Plaintiff prior to the conclusion of her FMLA leave period." (Doc. 1 at 5.) The self-care provision of the FMLA "entitles an 'eligible employee' up to twelve weeks of leave during any twelve month period if necessitated by 'a serious health

15

condition that makes the employee unable to perform the functions of [his or her] position.' " Wells, 2012 WL 3150819, at *2 (quoting 29 U.S.C. § 2612(a)(1)(D)). In its Motion to Dismiss, the Board argues that Plaintiff's FMLA claim arising under the self-care provision is barred by the Eleventh Amendment. (Doc. 16 at 12.) The Court agrees.

As previously discussed, HAMDC is am arm of the State due to the Board's control, ownership, and governance of HAMDC. See O.C.G.A. § 20-3-73.3. The Supreme Court has expressly applied Eleventh Amendment immunity to claims arising under the self-care provision of the FMLA against a state or its departments. Coleman v. Ct. of App. of Md., 566 U.S. 30, 43-44, 132 S. Ct. 1327, 1338, 182 L. Ed. 2d. 296 (2012) (holding states immune from suit pursuant to the FMLA self-care provision). As a result, Plaintiff's claim against HAMDC, to the extent it arises under the self-care provision of the FMLA, is **DIMSISSED**.

However, Plaintiff's claims under the family-care provision of the FMLA are not barred by the Eleventh Amendment. In its Motion to Dismiss, the Board only argues immunity to the extent that Plaintiff's claims arise under the self-care provision of the FMLA. (Doc. 16 at 12.) The Court agrees that Eleventh Amendment immunity only protects HAMDC and the Board from claims arising under the self-care provision. States, or arms of States, are not immune from suit for claims arising under the family-care provisions of

16

the FMLA. Nev. Dep't of Human Res., 538 U.S. at 123 S. Ct. at 1976 (holding that states are not immune from suit pursuant to the FMLA family-care provisions, including subsection (C) regarding caring for a spouse). Accordingly, Plaintiff's FMLA claims remain pending only to the extent they arise from her taking FMLA leave to care for her husband's serious medical condition.

III. The Board's Other Defenses

Along with its immunity arguments, the Board also argues in its Motion to Dismiss that Plaintiff's claims should be dismissed because Plaintiff failed to properly serve the Board, Plaintiff failed to exhaust her administrative remedies under the ADA, and Plaintiff's FMLA claim is time-barred. (Doc. 16.) Although Plaintiff failed to respond to these arguments in her response to the Board's Motion to Dismiss, the Court will not dismiss Plaintiff's claims on these grounds.

First, the Board argues that Plaintiff's ADA claims should be dismissed because "Plaintiff failed to personally serve [the Board] by serving the summons and complaint upon its Chancellor" as required by Federal Rule of Civil Procedure 4(j)(2) and O.C.G.A. § 9-11-4(e)(5) (requiring that a party suing a state agency serve process by delivering a copy of the summons and complaint to the chief executive officer). (Id. at 7.) Additionally, the Board argues that Plaintiff's claims should be dismissed because she failed to serve the summons and complaint on the Board within 120

days of her complaint being filed, as required by Federal Rule of Civil Procedure 4(m). (Id.) The Court will not dismiss Plaintiff's claims on these grounds. The Board received notice of the suit, as indicated by its filing of a motion to dismiss 131 days after Plaintiff filed her complaint. Moreover, the confusion surrounding the proper employer of the Plaintiff makes Plaintiff's service upon HAMDC understandable. According to the employment-related documents submitted by Plaintiff, HAMDC was the name of her employer. The Board did not present evidence to contradict Plaintiff's understanding. Because the Board claims it owns and controls HAMDC, yet none of Plaintiff's employment documents indicate that the Board was her employer, Plaintiff's service upon HAMDC was reasonable under the circumstances. The Court will not dismiss Plaintiff's claims based on a procedural technicality when the service on Herty, LLC and Mr. Koukoulas did not prejudice the Board or HAMDC. See Drill S., Inc. v. Int'l Fid. Ins. Co., 234 F.3d 1232, 1238 (11th Cir. 2000) (a summons that is "technically defective" is not fatal to service of process so long as it is in "substantial compliance" with the rules and there is no prejudice to the defendant); see also Ward v. Glyn Cty. Bd. Of Comm'r, CV 215-077, 2016 WL 4269041, at *9-10 (S.D. Ga. Aug. 11, 2016) (finding the Court has the discretion "to extend the time for service even in the absence of good cause.").

Second, the Board argues that Plaintiff's ADA claim should be

dismissed because "Plaintiff failed to assert in her complaint that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the proper defendant within 180 days as required by law." (Doc. 16 at 10.) Plaintiff filed a charge of discrimination with the EEOC, but her charge was against HAMDC, not the Board. (Doc. 20, Attach. 7.) Plaintiff's notice of right-to-sue letter was mailed on April 9, 2015. (Id.) Once a plaintiff receives a notice of right-to-sue letter from the EEOC, she has 90 days to file her complaint. 42 U.S.C. § 2000e-5(f)(1). Plaintiff filed her complaint on July 8, 2015, exactly 90 days after the EEOC mailed her notice of right-to-sue letter. (Doc. 1.) As a result, Plaintiff timely filed her complaint and the Board received sufficient notice of her intention to sue her employer.

Lastly, the Board argues that Plaintiff's FMLA claims should be dismissed because Plaintiff failed to file suit against the Board "within two years after the date of the last event constituting a violation." (Doc. 16 at 11.) An action under the FMLA must be brought within two years of "the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). Plaintiff was terminated on November 12, 2013 and she brought this action on July 8, 2015. (Doc. 1.) Therefore, Plaintiff's FMLA claims were brought within the two-year statute of limitations. Although the Board argues that the claims were not brought against the Board within two years

because the Board was not named as the defendant in Plaintiff's complaint, Plaintiff did name HAMDC in her complaint. The Board asserts that HAMDC "ceased to exist" (Doc. 21 at 3), but Plaintiff's employment-related documents continued to list her employer as HAMDC (Doc. 20, Attach. 4). Moreover, the Board cannot argue that it has such control and ownership of HAMDC to be Plaintiff's employer yet deny that service on HAMDC and Herty, LLC does not sufficiently provide the Board notice of suit. Therefore, the Court will not dismiss Plaintiff's remaining FMLA claim under the family-care provision based on this argument.

However, Plaintiff now knows that the Board is a proper defendant in this matter. Accordingly, Plaintiff must perfect service on the Board in compliance with the Federal Rules of Civil Procedure and Georgia law. If Plaintiff fails to perfect service on the Board within **thirty (30) days** of the date of this Order, the Board may move the Court to dismiss Plaintiff's remaining claims.

**CONCLUSION**

For the foregoing reasons, the Board's Motion to Dismiss (Doc. 16) is **GRANTED IN PART** and **DENIED IN PART.** Specifically, Plaintiff's ADA claims against HAMDC are **DISMISSED.** Similarly, Plaintiff's FMLA claims, to the extent they arise under the self-care provision, are **DISMISSED.** However, Plaintiff's FMLA claim that arises under the family-care provision remains pending.

Due to the clarification as to Plaintiff's former employer and the claims that Plaintiff can bring against HAMDC and the Board, Plaintiff is **DIRECTED** to amend her complaint within **thirty (30) days** from the date of this Order to reflect this Order. Plaintiff is **DIRECTED** to serve a copy of the complaint and summons as required by the Federal Rules of Civil Procedure on the Chancellor of the Board.

SO ORDERED this 19th day of December 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA